FILED
SUPERIOR COURT
OF GUAM

2021 AUG 20 PH 12: 41

CLERK OF COURT
BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| KEVIN PELLETIER,<br><br>Plaintiff,<br><br>v.<br><br>NGOC LUU,<br><br>Defendant. | Domestic Case No.: DM0118-20<br><br>**DECISION AND ORDER**<br>**(Defendant's Motion for Spousal Support**<br>**and Attorneys' Fees *Pendente Lite***<br>**and Preliminary Injunction)** |

This matter is before the Honorable Dana A. Gutierrez due to the filing of a Defendant Ngoc Luu's ("Defendant") Motion for Spousal Support and Attorneys' Fees *Pendente Lite* and Preliminary Injunction on July 28, 2020. Defendant is represented by Attorney Vanessa Williams, and Plaintiff Kevin Pelletier ("Plaintiff") is represented by Attorney William Gavras. Upon a review of the pleadings and in light of applicable law, the Court hereby **DENIES** Defendant's Motion for Spousal Support and Attorneys' Fees *Pendente Lite* and Preliminary Injunction ("Motion"). However, the Court **ORDERS** that the Plaintiff provide an accounting of the bank accounts which hold the parties' community property, as explained in detail below.

### PROCEDURAL BACKGROUND

The instant case arises out of a Complaint for Divorce ("Complaint") filed by Plaintiff on March 20, 2020. On July 28, 2020, Defendant filed the instant Motion for Spousal Support and Attorneys' Fees *Pendente Lite* and Preliminary Injunction. Plaintiff filed an Opposition on October 19, 2020, and Defendant filed a Reply on November 6, 2020. The Court heard the testimony of the parties at Evidentiary Hearings on May 13, 2021 and May 18, 2021 and took this matter under advisement.

### FACTUAL BACKGROUND

Plaintiff and Defendant have been married for over twenty (20) years. Compl., at ¶ 2.

Defendant claims that due to the separation and pending divorce action, she is unable to support her expenses each month, and that without Plaintiff's contributions, she cannot maintain the lifestyle to which she is accustomed, nor pay the attorneys' fees to defend this action. Motion, at 4.

Defendant initially sought approximately $5,850.00 per month to cover her expenses, but now seeks approximately $6,200.00, as well as $2,500.00 per month for attorneys' fees. Luu Decl. at ¶ 16-17 (July 28, 2020); Min. Entry at 11:21-11:24 AM (May 13, 2021). Defendant maintained that her monthly income since the separation was approximately $4,830.80, and that her employment with J&S Construction was expected to cease as of November 6, 2020. Luu Decl. at ¶¶ 9, 16-17 (July 28, 2020); Luu Decl. at ¶ 9 (November 6, 2020). Defendant was offered another job with J&S in Florida, at an hourly rate of $28 an hour, which Defendant claims yields approximately $2,000.00 to $3,200.00 per month. Min. Entry at 11:23 AM, 11:52 AM (May 13, 2021). Plaintiff earns approximately $14,950.00 per month from work, and approximately $9,300.00 per month in rental income from the parties' jointly owned properties in Massachusetts. Min. Entry at 10:10-10:25 AM (May 18, 2021). Defendant claims that she does not have access to the rental income nor the savings accounts where that income is deposited. Reply, at 2. Defendant claims said accounts are exclusively in Plaintiff's name and contained either $319,866.93 or $324,296.34 as of July 10, 2020. Motion, at 2; Luu Decl. ¶ 11 (July 28,2020).

Defendant also seeks a preliminary injunction to prevent Plaintiff from withdrawing funds from the above accounts, as she claims they contain community property. Motion, at 6. Defendant also claims parties jointly hold three bank accounts that she does have access to, which collectively contained exactly $221,979.44 as of July 10, 2020. Luu Decl. ¶ 12 (July 28, 2020). As of Defendant's May 13, 2021 testimony, these accounts totaled approximately $210,000.00. Min. Entry at 11:13 AM (May 13, 2021). These joint accounts are used for

community expenses such as property taxes and to support the parties' daughter with tuition and various living expenses. Motion, at 2.

As part of the aforementioned injunction, Defendant seeks that rental income from the jointly owned properties be deposited into the parties' joint account with the Bank of America, and that the only deductions from this joint account be made to pay maintenance expenses on the parties' joint rental properties and to continue paying their daughter's tuition and other expenses. Motion, at 6-7. Defendant claims her only other assets are approximately $41,225.13 in a retirement account. Luu Decl. ¶ 13 (July 28, 2020).

Plaintiff claims Defendant has additional undisclosed income streams and savings accounts. Pelletier Decl. ¶ 2-3 (October 19, 2020). Defendant claims that these additional assets do not belong to her but belong to her sister, who has submitted a notarized letter corroborating the claim. Luu Decl. ¶ 4-5, Exhibit A (November 6, 2020).

## DISCUSSION

19 G.C.A. § 8402 dictates that, "[w]hen an action for dissolution of marriage is pending, the court may, in its discretion, require the husband…to pay as alimony any money necessary to enable the wife…to support herself…or defend the action."

In determining what constitutes a "necessary" expense, the court must exercise discretion in light of the parties' economic circumstances, including their assets, incomes, earning capacities, needs, and ability to pay. *See Cruz v. Cruz*, 2005 Guam 3 ¶¶ 9-10 (citing *Arnold v. Arnold*, 12 P.2d 435, 436 (Cal. 1932); *Sweeley v. Sweeley*, 170 P.2d 469, 470 (Cal. 1946)). The Guam Supreme Court has held that 19 G.C.A. § 8402 is based on former California Code § 137, and, therefore, California cases interpreting former section 137 are persuasive in matters involving 19 G.C.A. § 8402. *Cruz*, 2005 Guam 3 ¶ 9. The authority in this instance holds that the Court should consider the comparative guilt of the parties, the needs of one spouse, and the ability of the other spouse to contribute. *See Millington v. Millington*, 259 Cal.App.2d 896, 916

(Ct. App. 1st 1968); *Mueller v. Mueller*, 44 Cal.2d 527, 530 (1955).

## I.     Determination of Spousal Support.

In determining the amount of spousal support, the Court is guided by the standard affirmed by the Guam Supreme Court in *Kang v. Kang*, which prioritizes "the parties' prior and present standard of living, the length of the marriage, and the age, education, and respective abilities of the parties." *Kang*, 2014 Guam 25 ¶ 10, 20. Additional circumstances to be taken under consideration include the property which each party possesses, their respective incomes and earning abilities, and their needs. *Id*. at ¶ 20 (citing *Sweeley*, 170 P.2d at 470).

In *Kang*, the trial court took into consideration the plaintiff's lack of employment and marketable job skills, as well as evidence that the sum she was receiving covered only the "bare necessities" and "that she was currently living far below the standard of living she enjoyed during their marriage." *Id*. The court also noted that the plaintiff in that case had been evicted from her home of 23 years, that her interests in the parties' real property was at one point valued at over $9 million (supported by quitclaim deeds), and that she was surviving on her dwindling savings while paying her attorneys' fees out of pocket. *Id*. (citing *Kang v Kang*, DM0675-09, Plaintiff's Decl., at 1-4 (April 19, 2012)). The Guam Supreme Court rejected the idea that monthly temporary spousal support must equal the minimum needed by the recipient and held that the award must reflect the awardee's ability to live in her accustomed manner pending the disposition of the divorce action. *Kang*, 2014 Guam 25 ¶ 24-25. However, the *Kang* Court affirmed the trial court's decision to increase the award of spousal support only because there was "substantial evidence that the standard of living to which [the wife] grew accustomed during the parties' marriage require[d] significantly more." *Id*.

In this case, several of Defendant's current expenses are contested as greater than necessary. Min. Entry, at 10:18-10:20 AM (May 18, 2021). Aside from the testimony and declarations from the parties, there was no documentary evidence to establish either the

4

Defendant's accustomed manner of living during the marriage, her current living expenses, nor her current income. Thus, the Court is presented with the issue of whether the testimony of the parties constitutes sufficient evidence for the Court to award *pendente lite* spousal support and attorneys' fees.

In similar cases brought before the Superior Court, parties have been denied spousal support based on their failure to provide substantial evidence of their past or current monthly expenses, or the standard of living to which they were previously accustomed.[1] For example, in *Sablan v. Sablan*, the Guam Supreme Court affirmed the trial court's decision to deny awarding spousal support due to the moving party's failure to provide sufficient evidence of need. *Sablan*, 2017 Guam 3 ¶¶ 93-94; *see Sablan v. Sablan*, DM0277-11, FFCL at 24 (Oct. 31, 2014) ("Defendant's requested spousal support of $5,000 a month is wholly unsupported by any evidence she requires $5,000 a month, in addition to her current income, in order to sustain her current needs or lifestyle."). The Guam Supreme Court affirmed the trial court's reasoning and held that "the decision of whether or not to award spousal support is clearly within the discretion of the trial court." *Sablan*, 2017 Guam 3 ¶ 94.

Here, Defendant lists her expenses, but does not substantiate them. Most notably, no invoices or receipts are presented to document any of the expenses. Min. Entry, at 11:20-11:22 AM; 11:48-11:50 AM (May 13, 2021). By contrast, in *Poffenberger v. Poffenberger*, the prevailing movant submitted, *inter alia*, documentary evidence of the outstanding balance of her attorneys' fees, earnings statements from her employment, and an accounting of all monthly expenses for her and the parties' two minor children to support her *pendente lite* request for

---

[1] *E.g., Aquiningoc v. Aquiningoc*, DM0431-10, FFCL at 7 (April 10, 2012) ("Plaintiff did not provide any evidence of her past or current monthly expenses or the standard of living that the couple enjoyed while cohabiting. These factors are crucial to a determination of support because without some indication of Plaintiff's needs, this Court cannot determine a reasonable amount of maintenance . . . Plaintiff has not met her burden of proof on the issue of spousal support and this Court will not grant her request for maintenance."); *Espinosa v. Espinosa*, DM0731-08, D&O at 2 (August 3, 2009) ("There are several factual disagreements as to what expenses are currently being paid by whom or out of what account, and without any evidence to provide proof one way or the other, the Court cannot make a finding as to what support is necessary.").

spousal support and attorneys' fees. DM0276-13, D&O (March 18, 2016). Here, Defendant has only provided an approximation of her monthly expenses, several of which are challenging to fully justify.

Furthermore, "maintaining a litany of expenses is not sufficient to justify an increase of spousal support," or else "an awardee of temporary spousal support would seek modification of an earlier order after any iota of change, however, slight, regardless of whether that change . . . affected the awardee's ability to 'live in her accustomed manner pending the disposition of the action' and 'properly present her case.'" *Malabanan v. Malabanan*, 2013 Guam 30 ¶ 30 (citing *Whelan v. Whelan*, 197 P.2d 361, 362 (Cal. Dist. Ct. App. 1948)). Defendant must demonstrate her accustomed manner of living, not her lifestyle acquired since the parties' separation.

Among the questionable expenses in this case are the $1,200.00 a month in travel expenses, and the $1,040.00 a month payment on a brand-new Lexus RX 350 Sports Utility Vehicle ("SUV"). Min. Entry at 11:21 AM (May 13, 2021). For the former, Defendant alleges that she needs the travel expenses to visit her daughters, who live in New York and New Hampshire, respectively. *Id.* at 11:35-11:36 AM. Plaintiff's counsel suggested, and Defendant agreed, that round trip tickets from Florida to New York and New Hampshire respectively would cost approximately $400.00 per trip, leaving approximately $400.00 for spending money. *Id.* at 11:36-11:37 AM. This assumes that Defendant would be traveling twice per month. Defendant claims that her travel budget is comparable to when she was married, when she "traveled extensively." *Id.* at 11:23 AM. However, her previous travel schedule seems closer to several times a year than twice per month, and primarily to Vietnam. *Id.* at 11:39 AM. Now that Defendant lives in Florida, her travel schedule varies significantly from what it was while living in Guam. Specifically, her requested relief indicates a drastic increase in travel from that which she was accustomed to during the marriage. *Id.* at 11:39-11:40. Therefore, it is difficult to justify the expenses for such a significant increase in travel activity.

The car payment is similarly difficult to justify. Defendant seems to imply through her lease that a new Lexus RX 350 SUV is comparable in value to the 10-year-old Lexus sedan of indeterminate model she previously drove, and states that she bought the newer Lexus because she "needs a reliable vehicle." Min. Entry at 11:30-11:34 AM (May 13, 2021). This presents several issues. First, it is unclear whether the older sedan was at the higher or lower end of the Lexus price spectrum, and thus difficult to tell whether the two vehicles would be comparable in price if both were new. However, Plaintiff asserts that the SUV would be more expensive than the sedan. Min Entry, at 10:20-10:30 AM (May 18, 2021). Second, there is the matter of the insurance payment of $1,100.00 for six months. *Id.* at 11:21 AM. Presumably, the insurance premiums would have been lower for the older luxury vehicle, though, again, we do not know what the value of that vehicle was or the amount of any insurance previously paid by the parties. Third, there is the matter of the associated $300.00 per month in gas as, again, it is unclear what amount of gas was previously consumed when the Defendant drove the Lexus sedan. Thus, not only do the vehicles appear not comparable, the new vehicle also appears to increase ancillary expenses in addition to its own increased cost.

Finally, in terms of Defendant's needs, there is additional concern due to the allegations of $400,000.00 in previously undisclosed assets in the now-closed Santander account. Min. Entry at 11:41-11:46 AM (May 13, 2021). Defendant maintains that, while the account is in her and her daughter's name, the Santander account funds belong to her sister. Min. Entry at 11:28 AM (May 13, 2021). Defendant's sister submitted a notarized letter corroborating that she asked Defendant to open the account, and that Defendant's sister used it to deposit money until February 2020. Luu Decl. ¶ 4-5, Exhibit A (November 6, 2020).

Defendant claims that the account was to cover emergency funds for the sister's two adult sons, who are 45 and 35, respectively, at this time. Min. Entry at 11:41 AM (May 13, 2021). Defendant also testified that she physically carried cash from Vietnam to the United States to

deposit into the Santander account for her sister, and that her sister did not want to transfer it through the bank because "banks are not safe." Min. Entry at 9:34-9:35 AM (May 18, 2021).

Defendant did not mention in her Motion or supporting Declarations that approximately $40,000.00 was withdrawn from the account to cover a down payment on Defendant's daughter's house. Min. Entry at 11:43-11:44 AM (May 13, 2021). Defendant claimed it was a loan. *Id.* at 11:45 AM. However, there is no documentation to memorialize this loan agreement. *Id.* Also, there does not seem to be any indication that said loan was paid back.

Finally, the account was open from 1999 until 2020, close to approximately a month before the parties separated. There is no documentation indicating where those funds went after the account closed. Without evidence accounting for this money, the scope of Defendant's assets is thrown into question.

Because there are factual disagreements among the parties as to what expenses are currently being paid by whom or out of what account, and without any evidence to provide proof one way or the other, the Court is unable to make a finding as to what support is necessary, and must therefore deny Defendant's request for *pendente lite* spousal support.

## II.    Determination of Attorneys' Fees.

Both parties should have equal ability to pay for their attorneys' fees in this action so that one side is not out-litigated. *See, e.g., Rosenthal v. Rosenthal*, 17 Cal. Rptr. 186, 191 (Ct. App. 1961) ("If necessary the husband must invade his investments to provide the wife with the sinews to conduct her litigation with him."). However, 19 G.C.A. § 8402 allows the court to award attorneys' fees only as "necessary to enable the wife, or husband to . . . prosecute or defend the action." *Id.* Factors the Court may consider when awarding attorneys' fees include the requested fee amounts, payments already made to the attorney, and invoices presented by the attorney. *Cruz*, 2005 Guam 3 ¶ 10-14.

In *Lovern v. Lovern*, the Supreme Court of California reversed the trial court's decision to

8

grant temporary spousal support because the wife failed to sufficiently demonstrate her need for such an award. *Lovern*, 35 P. 87, 87-88 (Cal. 1893) (interpreting California Civil Code § 137). The Court held that the purpose of the statute "was to empower the court during the pendency of an action for divorce, upon a proper showing made by the wife for that purpose, to compel the husband to provide her with the means necessary to enable her to prosecute or defend the action." *Id.* Thus, the Court reasoned:

> If the expenses of the action have been incurred or paid by her with means derived from her separate estate, or upon her credit, then there can be no necessity for an allowance by the court to enable her to do that which she has already done, and without such necessity the court has no authority under the statute to make such an order. And no better evidence can be adduced of her ability in this respect than the fact that she has been able, as the record shows, to incur these expenses and to pay them with money borrowed by her entirely upon the strength of her own credit . . . Such an allowance can only be granted as to expenses necessary to be incurred in the future prosecution or defense of the action, and cannot be made for the payment of past expenses, except where such payment is necessary to be made in order to enable the wife to further prosecute or defend her case.

*Id.*

Because Defendant has not provided evidence, other than her testimony which is contradicted by the Plaintiff, as to the extent of her resources, this Court is unable to determine her need for attorneys' fees. Furthermore, like in *Lovern*, she has been able to use her own resources to secure an attorney up to this point in the action. Min. Entry, at 11:48 AM (May 13, 2021). Defendant testified that she has made two "retainer" payments to her counsel, each in the amount of $2,500.00, equaling a total of $5,000.00. *Id.* However, Defendant stated that she has not received any invoices, billings, or statements from her counsel indicating how much Defendant owes in attorneys' fees. Min. Entry, at 11:49 AM (May 13, 2021). Therefore, before attorneys' fees can be awarded, evidence of the services rendered and amount paid so far is needed in order for the Court to determine whether fees should be granted and the reasonableness of such fees evaluated. *See Kang*, 2014 Guam ¶ 25.

### III.   Preliminary Injunction.

Defendant requests that the Court issue an injunction to freeze Plaintiff's bank accounts which are alleged to hold the parties' community property, namely his bank accounts at Enterprise Bank and Santander Bank. Motion, at 6. Further, Defendant requests that the joint income generated from the parties' rental properties be deposited into the parties' joint account at Bank of America and that the only amounts permitted to be deducted from this account be limited to joint expenses, including their daughter's tuition and maintenance of their rental properties. *Id.*

To obtain an injunction, the moving party must demonstrate the risk of irreparable injury absent the injunction, and the likelihood of success on the merits. *Mack v. Davis*, 2013 Guam 13 ¶ 12. Plaintiff offered that he "is willing to provide the Court and the Defendant with a monthly accounting of the deposits and withdrawals associated [with] the accounts at issue," and that Defendant may then "decide if she can in good faith assert that Defendant is dissipating" the parties' joint assets. Opp., at 5. As Plaintiff notes in his Opposition, Defendant has not alleged that Plaintiff has committed any waste against their community property, nor has she alleged the community property is in danger of being wasted. *Compare* Opp., at 4, *with* Motion, at 6-7. Without such an allegation or any evidence to indicate the Plaintiff may be dissipating marital assets, this Court cannot find that there is a risk of irreparable injury absent the injunction. Therefore, the Court must decline to issue the requested injunctive relief.

However, based on the reasons stated above and at the Plaintiff's suggestion, the Court orders that the Plaintiff provide an accounting of the bank accounts which hold the parties' community property, specifically Defendant's bank accounts held at Enterprise Bank and Santander Bank, for the period of March 1, 2020 to present by **September 15, 2021**. Thereafter, such accounting shall be filed on a monthly basis while this matter is pending. Such accounting may be provided by filing the bank statements of these accounts with the Court.

## CONCLUSION

Based upon the foregoing, Defendant's Motion for *Pendente Lite* Spousal Support and Attorneys' Fees and Preliminary Injunction is **DENIED**. No spousal support or attorneys' fees will be awarded at this time, nor will a preliminary injunction be awarded. However, the Court **ORDERS** that Plaintiff provide an accounting of the bank accounts which hold the parties' community property, specifically Defendant's bank accounts held at Enterprise Bank and Santander Bank for the period of March 1, 2020 to present by **September 15, 2021**. Thereafter, such accounting shall be filed on a monthly basis while this matter is pending.

The Pre-Trial Conference shall be held on **September 8, 2021 at 8:30 a.m.**

**SO ORDERED**: ___AUG 2 0 2021___

**HONORABLE DANA A. GUTIERREZ**
**Judge, Superior Court of Guam**

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
_V. Williams_
_@TVIRAS_
Date: _____ Time: __8/20/21__
**Joseph Bamba, Jr.**
Deputy Clerk, Superior Court of Guam

11